IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE ROY,

    Petitioner,                      2: 10 - cv - 245 - TJB

    vs.

J.W. HAVILAND,

    Respondent.                     ORDER

_____/

        Petitioner, Jesse Roy, is a former state prisoner proceeding with a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner served a sentence of seven years in prison after a jury convicted him on one count of possession of a controlled substance (phenobarbital), one count of transportation of that controlled substance, one count of possession of controlled substance paraphernalia, and one count of possession of not more than 28.5 grams of marijuana (Cal. Health & Safety Code §§ 11377(a), 11379(a), 11364, and 11357(b), respectively). Petitioner raises four claims in this federal habeas petition; specifically: (1) his conviction was based on evidence obtained through a warrantless search which was not justified as a search incident to arrest, in violation of his Fourth Amendment rights ("Claim I"); (2) the prosecution suppressed evidence favorable to Petitioner by failing to divulge the identity of a witness and the prosecution intentionally used perjured testimony ("Claim II"); (3) there was

1

insufficient evidence for the jury to find Petitioner guilty of transportation of a controlled substance ("Claim III"); and, (4) the jury instructions with regard to transportation of a controlled substance did not include a necessary element of the crime, violating Petitioner's right to a jury verdict and due process ("Claim IV"). Both Petitioner and Respondent consented to the jurisdiction of a United States Magistrate Judge in this case. Docket Nos. 15, 16. For the reasons stated herein, the federal habeas petition is denied.

## I. JURISDICTION

28 U.S.C. § 2254(a) provides that a "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "Section 2254(a)'s 'in custody' requirement is jurisdictional and therefore it is the first question we must consider." *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010) (internal citations and quotations omitted). The "in custody" requirement "has been interpreted to mean that federal courts lack jurisdiction over habeas corpus petitions unless the petitioner is 'under the conviction or sentence under attack at the time his petition is filed.'" *Resendiz v. Kovensky*, 416 F.3d 952, 956 (9th Cir. 2005) (quoting *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam)). The petitioner must be in custody at the time that the petition is filed, *see Carafas v. LaVallee*, 391 U.S. 234 (1968), but the petitioner's "subsequent release from custody does not itself deprive the federal habeas court of its statutory jurisdiction." *Tyars v. Finner*, 709 F.2d 1274, 1279 (9th Cir. 1983).

In the present case, Petitioner was a state prisoner at the time he filed his initial habeas petition. *See* Pet'r's Pet., Docket No. 1. He was also in custody when he filed his amended petition. *See* Pet'r's Am. Pet., Docket No. 10. Thereafter, on March 16, 2010, Petitioner filed a notice of change of address which indicated he had been released from prison. *See* Docket No. 11. Because Petitioner was "in custody" at the time he filed his petition, this court retains jurisdiction to reach the merits of his claims.

## II. FACTUAL BACKGROUND[1]

At approximately 5:45 p.m. on December 3, 2004, a police officer was dispatched to respond to an anonymous report of three males smoking a controlled substance at an apartment complex playground on Madrone Avenue in West Sacramento.FN1 The officer was familiar with the described complex as he had previously received calls reporting drug activity and drinking in public in the area. The dispatcher described the suspects as three Black males, one heavyset and another thin and bald. One individual wore a green jacket, one wore a black jacket, and the third wore dark clothing. The officer arrived on the scene within approximately three minutes and observed two males who matched the general description given over dispatch. As the officer approached the playground area in his patrol car, the two individuals noticed the car and "immediately began," as the officer testified, "walking at a swift pace slash running" toward the rear of the apartment complex. The officer radioed for more units and exited the car.

> FN1. The facts are drawn from trial testimony and evidence, as well as from the hearing on the motion to suppress evidence. Any pertinent differences between the two sources are noted.

The officer ran behind the two individuals and yelled, "West Sacramento Police, stop." Defendant stopped, but the other individual continued to run away. The officer estimated that defendant had moved approximately 75 yards from his initial spot to where he was stopped.FN2 When the officer approached defendant, he observed that defendant's eyes were bloodshot, his speech was slurred, and he appeared unsteady on his feet. The officer also smelled a strong odor of alcohol and marijuana on defendant.

> FN2. In the motion to suppress hearing, the officer testified that defendant ran about 60 feet before he was stopped.

Defendant's hands were underneath a large, puffy jacket when the officer approached him. The officer ordered defendant to show his hands, but defendant did not comply and looked around in other directions. The officer again ordered defendant to show his hands and pointed his gun at defendant, but defendant still did not obey. Then the officer ordered defendant to the ground with his hands

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District decision on direct appeal from January 2008 and filed in this Court by Respondent on October 27, 2010 as Lodged Doc. C (hereinafter referred to as the "Slip Op.").

3

visible, and defendant lay down with his hands out from under his coat. The officer handcuffed defendant and asked if he had had anything to drink. Defendant replied that he had some beer. The officer informed defendant that he had received a call about individuals smoking marijuana at the playground, and defendant matched the caller's description. Defendant then told the officer that he had smoked marijuana and "meth" (methamphetamine). When the officer asked defendant if had any drugs on his person, defendant admitted that he had some marijuana on him. The officer then searched the pockets of defendant's pants and found marijuana, a plastic pill bottle containing 13 pills, and two glass pipes. Eight of the pills found were later determined to be phenobarbital. The remaining five pills were not found to be illegal substances.

Defendant moved to suppress the evidence the officer found on him. Defendant principally argued that the officer did not have reasonable suspicion to initially detain him. The trial court denied defendant's motion to suppress, finding that the officer had reasonable suspicion to detain defendant based on the corroboration of the anonymous tip and defendant "walking away" or "immediately attempt[ing] to flee" from the officer, and that no infringement occurred after the initial detention.

After being found guilty on all counts, defendant moved for a new trial based on newly discovered evidence and prosecutorial violations of Brady, supra, 373 U.S. 83 (failing to disclose material exculpatory evidence). Defendant later withdrew his motion for new trial, and the trial court dismissed one of defendant's two alleged prior strike convictions. Defendant received a seven-year term.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). "The relevant state court determination for purposes of AEDPA review is the last reasoned state court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). To the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and whether the state court's decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). "When it is clear, however, that the state court has not decided an issue, we review that question *de novo*." *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*, 545 U.S. 374, 377 (2005)).

IV. ANALYSIS OF PETITIONER'S CLAIMS

1. Claim I

In Claim I, Petitioner alleges his conviction was based on evidence obtained through a warrantless search which was not justified as a search incident to arrest, in violation of his Fourth Amendment rights.

///

5

In *Stone v. Wolff*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Wolff*, 428 U.S. 465, 494 (1976) (footnotes omitted). Here, Petitioner was given a full and fair hearing at the trial court on his motion to suppress. *See* Rep.'s Tr. at 22-85.[2] He was also permitted to appeal the trial court's ruling and the California Court of Appeal produced a reasoned decision upholding the trial court's determination not to suppress the evidence. *See* Slip Op. at 4-7. As such, Petitioner's Fourth Amendment claim is barred by *Stone*. *See Moorman v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (*Stone* bars consideration of a Fourth Amendment claim in habeas when the state provided an evidentiary hearing at the trial level which was later reviewed by a state appellate court); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner is not entitled to relief on this claim.

2. Claim II

In Claim II, Petitioner claims that the prosecution failed to divulge the identity of a witness in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Respondent asserts that the claim is procedurally barred. Petitioner asserted his *Brady* violation in a motion for a new trial. However, before the trial court could rule on the motion, Petitioner withdrew it. The Court of Appeal concluded that:

> Certain commonsense conclusions result from defendant's actions in withdrawing his motion. (*See Vogelsang v. Wolpert* (1964) 227 Cal.App.2d 102, 129.) A party is deemed to forfeit issues not raised in the trial court because the trial court should be given an opportunity to correct the error or abuse. (*People v. Burgener* (2003) 29 Cal.4th 833, 889; *People v. Green* (1980) 27 Cal.3d 1, 27.) If a party does not present an issue for the trial court to rule upon, that party may be deemed to have "waived or abandoned it."

---

[2] Respondent erroneously filed volume 1 of the Reporter's Transcript as volume 1 of the Clerk's Transcript and vice versa. All references to the Reporter's transcript or Clerk's transcript are to the correct document, regardless of its incorrect caption.

6

1         (*People v. Braxton* (2004) 34 Cal.4th 798, 813.)

2         Here, defendant has forfeited his claim of *Brady* error. By withdrawing his motion for new trial, he never allowed the trial court an opportunity to rule on this issue. Therefore, defendant abandoned this claim and may not present it for the first time on appeal.

5 Slip Op. at 12-13.

6       It is well-established that California's contemporaneous objection requirement is independent of federal law.  California law has long required a defendant to make a timely and specific objection at trial in order to preserve a claim for appellate review.  *See, e.g.*, Cal. Evid.Code § 353; *People v. Ramos*, 15 Cal. 4th 1133, 1171, 64 Cal. Rptr. 2d 892, 938 P.2d 950 (1997); *People v. Green*, 27 Cal. 3d 1, 27, 164 Cal. Rptr. 1, 609 P.2d 468 (1980).  The United States Supreme Court has acknowledged that a state court's application of the contemporaneous objection rule may constitute grounds for default.  *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). The Ninth Circuit has confirmed that the contemporaneous rule is independent, and has honored defaults for failure to comply with the rule.  *See Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999); *Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995); *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir.1981).  This district has consistently treated claims barred in state court under *People v.Green*, *supra*, as procedurally barred in federal court.  *See Banks v. Hedgpeth*, 2010 WL 520613 (No. 08-cv-899 PJH), at *5 (E.D. Cal. Feb. 9, 2010); *Xiong v. Shepherd*, 2008 WL 2620749 (No. 05-cv-1230 LJO JMD), at *12 (E.D. Cal. July 3, 2008); *Edelbacher v. Galaza*, 2007 WL 677222 (No. 97-cv-5401 LJO WMW), at *29 (E.D. Cal. March 1, 2007); *see also Carpenter v. Ayers*, 548 F.Supp.2d 736, 746 (N.D. Cal. 2008).  Petitioner has not "assert[ed] specific factual allegations that demonstrate the inadequacy of the state procedure." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003) (outlining the Ninth Circuit's burden-shifting approach to procedural default claims).  As such, Petitioner's claim is procedurally barred and Petitioner is not entitled to federal relief on this claim.

26 / / /

1  Petitioner does not directly allege that the withdrawal of his motion for a new trial was
2 the result of the ineffective assistance of counsel, which could overcome a procedural default.
3 *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (ineffective assistance of counsel may be
4 cause to excuse default only if the procedural default was the result of an independent
5 constitutional violation). However, even if the court were to interpret Petitioner's claim as a
6 separate claim for ineffective assistance of counsel to overcome the procedural bar, that claim
7 would also be procedurally defaulted. Petitioner raised his ineffective assistance of counsel
8 claim in his habeas petition in Yolo County Superior Court. In ruling on Petitioner's petition, the
9 Superior Court, citing *In re Robbins*, 18 Cal. 4th 770, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998),
10 found the petition untimely. Lodged Doc. F, at 15. Just this term, in *Walker v. Martin*, 562 U.S.
11 __ , 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011), the Supreme Court held that California's timeliness
12 bar is an independent state ground adequate to bar habeas corpus relief in federal court. As such,
13 Petitioner cannot show that his *Brady* claim is not procedurally barred and he is not entitled to
14 relief on this claim.

15  3. Claim III

16  In Claim III, Petitioner contends that there was insufficient evidence to support a
17 conviction for transportation of a controlled substance. Specifically, Petitioner contends that
18 movement which is merely incidental to the possession of drugs and not to enable the marketing,
19 distribution, or proliferation of drugs is insufficient to support a conviction under the statute: "To
20 apply the statute without limitation to all person[s] who are carrying contraband while in motion
21 would expose every defendant, who might unlawfully possess some contraband, to a charge of
22 transportation of that substance, whenever the person takes a single step." Pet'r's Am. Pet., at
23 47.

24  The California Court of Appeal ruled on Petitioner's sufficiency of the evidence claim as
25 follows:
26 ///

Defendant argues that the evidence is insufficient to support his conviction for transportation of a controlled substance (phenobarbital). Defendant urges this court to conclude that there is no violation of the transportation offense of Health and Safety Code section 11379, subdivision (a) where a defendant' movement is incidental to his possession of the drugs, and the conduct does not facilitate trafficking, distribution, or personal use of the drugs. We decline to address the merits of defendant' proposed limitation because we find that defendant' movement here facilitated his personal use of the drugs.

The California Supreme Court has interpreted the controlled substance transportation statutes to include transportation solely for personal use. (*People v. Rogers* (1971) 5 Cal.3d 129, 135.) The high court reasoned that, in the absence of any legislative intent to the contrary, "a more severe penalty for those who transport drugs may have been deemed appropriate to inhibit the frequency of their own personal use and to restrict their access to sources of supply." (*Id*. at pp. 136-137; *see also People v. Emmal* (1998) 68 Cal.App.4th 1313, 1316.)

In *People v. Ormiston* (2003) 105 Cal.App.4th 676, the Court of Appeal held that the term "transport" in Health and Safety Code section 11379 encompasses moving controlled substances from one location to another by walking. (*Id.* at pp. 684-685.) The court ruled that the defendant's use of foot travel, rather than some other mode of travel, did not negate the element of transportation. (*Id.* at p. 684.) The court reasoned that the requirement of volitional travel of a controlled substance from one place to another "avoids any unwarranted extension of the statute to restrained minimal movement within a residence or other confined area that does not facilitate trafficking, distribution or personal use of drugs." (*Id.* at pp. 684-685.)

Based on the evidence in the present case, a jury could find that defendant was moving contraband from one location to another when he was stopped. Defendant observed the responding officer's patrol car and moved quickly in the opposite direction. By the time the officer stopped defendant, defendant had jogged approximately 75 yards away. Despite defendant's argument to the contrary, this movement *did* in fact facilitate his personal use of drugs. Defendant saw the police car approach and he moved swiftly in the opposite direction to evade police supervision or interaction. This volitional movement was meant, at least in part, to afford defendant an opportunity to continue to possess the drugs for personal use. By purposefully moving to a location further away from the police officer while carrying phenobarbital, defendant was transporting phenobarbital to facilitate his personal use. Therefore, there was sufficient evidence that defendant transported phenobarbital in violation of Health and Safety Code section 11379, subdivision (a).

Slip Op. at 7-9.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). A petitioner for writ of habeas corpus "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

A federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *See Jackson*, 443 U.S. at 324 n. 16; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." (citations omitted)). California Health and Safety Code section 11379, subdivision (a), provides that "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled substance . . . shall be punished . . . ." In interpreting this statute, California courts have determined that there is no "minimal movement" necessary to constitute transportation of a controlled substance. *People v. Emmal*, 68 Cal. App. 4th 1313, 1315, 80 Cal. Rptr. 2d 907 (1998) (driving a car twenty feet through a parking lot sufficient transportation to support conviction). The transportation need not be by motor vehicle. *People v. LaCross*, 91 Cal. App. 4th 182, 185, 109 Cal. Rptr. 2d 567 (2003) (citing *Emmal*, 68 Cal. App.

4th at 1313) (transport via bicycle sufficient for conviction).  In *People v. Ormiston*, 105 Cal. App. 4th 676, 683, 129 Cal. Rptr. 2d 567 (2003), the California Court of Appeal determined that walking while in possession of a controlled substance supports a conviction under the statute.

Furthermore, the transportation does not need to be "for the purpose of selling or distributing drugs to others." *People v. Rogers*, 5 Cal. 3d 129, 132, 486 P.2d 129, 95 Cal. Rptr. 601 (1971) (interpreting a similar statute in effect at the time proscribing the transportation of marijuana).  Transportation of a controlled substance, even if it is solely for the purpose of personal use, supports a conviction under the statute. *Id.* at 134-137 ("a more severe penalty for those who transport drugs may have been deemed appropriate to inhibit the frequency of their own personal use and to restrict their access to sources of supply").  On direct appeal in the present case, the California Court of Appeal determined that attempting to evade confrontation with the police facilitated Petitioner's personal use.  Transporting the drugs away from the police would "afford [Petitioner] an opportunity to continue to possess the drugs for personal use."  Slip Op. at 9.  Thus, under California law, so long as there is substantial evidence that Petitioner traveled by foot in an effort to evade law enforcement while carrying a controlled substance, there is sufficient evidence to support a conviction for transportation of a controlled substance under Penal Code section 11379, subdivision (a).

Viewing the evidence in the light most favorable to the prosecution, such evidence exists in the record.  Jason Fortier, an officer with the West Sacramento Police Department, was the first witness called by the prosecution.  Officer Fortier was dispatched to a playground where suspects had been reported smoking a controlled substance.  Rep's Tr. at 137.  When Fortier arrived at the scene, he observed Petitioner in the playground, matching the description from dispatch.  *Id.* at 138.

> Q: Could you tell whether or not [Petitioner] saw you approaching?
>
> A: Yes, I did.

| | | |
|---|---|---|
| 1 | Q: | And did he? |
| 2 | A: | Yes. |
| 3 | Q: | He saw you? |
| 4 | A: | He did see me. |
| 5 | Q: | What did he do when he saw you approach? |
| 6 | A: | Once he saw my patrol car, him and another Black male adult exited the playground area. |
| 7 | Q: | Rapidly? |
| 8 | A: | That's correct. |
| 9 | Q: | How rapidly? |
| 10, 11 | A: | I would say walking at a swift pace slash running. If I had to describe it, a jog. |
| 12 | Q: | Did they jog toward you or away from you or in jagged? |
| 13 | A: | Away from me. |
| 14 | | . . . |
| 15, 16 | Q: | You caught up with him. How far from the point where he was when you initially saw him until you caught up with him, how far in distance? |
| 17 | A: | I would say approximately 75 yards.[3] |
| 18 | Q: | Seventy-five yards? |
| 19 | A: | Correct. |
| 20 | Q: | Was it a straight 75 yards or around stuff? |
| 21 | A: | Around stuff. |

Rep.'s Tr. at 138-39. Thereafter, Fortier performed a search of Petitioner in which he discovered

---

[3] At the preliminary hearing, Fortier testified that he had only chased Petitioner 60 feet. On cross-examination at trial, Petitioner's counsel used this in an attempt to question the officer's credibility. *See* Rep.'s Tr. at 156. Fortier said the 60 foot statement was a mistake. *Id.* Either distance would support a conviction under California law. *See Emmal*, 68 Cal. App. 4th at 1315; *People v. Ormiston*, 105 Cal. App. 4th at 683.

a pill bottle, without a prescription label, containing phenobarbital pills. *Id.* at 142-43.

Officer Fortier's testimony provided ample evidence from which the jury could conclude Petitioner transported a controlled substance under California law. When Petitioner saw the patrol car, he jogged away in the opposite direction. The jury could logically conclude that this was an attempt to evade the police in order to maintain possession of the pills for personal use and avoid going to jail. As discussed above, this is all that is required for a conviction under Penal Code section 11379(a). Thus, the California Court of Appeal made a reasonable determination that sufficient evidence supported Petitioner's conviction. Petitioner is not entitled to relief on this claim.

    4. Claim IV

In Claim IV, Petitioner claims the jury instructions with regard to transportation of a controlled substance did not include a necessary element of the crime, violating Petitioner's right to a jury verdict and due process. Specifically, Petitioner alleges that the trial court failed to instruct the jury that they must determine that Petitioner had a "useable amount" of the controlled substance, as required by California law. Respondent does not maintain that the instruction was proper, but rather argues that any error was harmless. Respondent is correct.

In *Neder v. United States*, 527 U.S. 1, 8-15 (1999), the Supreme Court held that an instruction that omits an element of the offense is subject to harmless error analysis. The California Court of Appeal, pursuant to *Champan v. California*, 386 U.S. 18, 24 (1967), found that the error was harmless beyond a reasonable doubt. Slip Op. at 10. When a petitioner seeks collateral relief from a state-court judgment, a federal court employs a less stringent harmless error analysis, whether the "error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Fry v. Pliler*, 551 U.S. 112 (2007) (holding that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . .

1  whether or not the state appellate court recognized the error and reviewed it for harmlessness
2  under . . . *Chapman*").

3    Under the *Brecht* standard, there is no question that the failure to give an instruction on
4  the element of usable amount did not have a substantial and injurious effect or influence in
5  determining the jury's verdict.  This is because on another count, possession of a controlled
6  substance, the jury was instructed that they must find Petitioner possessed a usable amount of
7  phenobarbital.  Rep.'s Tr. at 215.[4]  The jury returned a guilty verdict on this charge.  Thus, the
8  jury did conclude that the amount of phenobarbital in Petitioner's possession was a usable
9  amount.  As such, the jury would have consistently concluded Petitioner transported a usable
10 amount and any error in instructing them in that regard is harmless.  Petitioner is not entitled to
11 relief on this claim.

12                              V.  CONCLUSION

13    For the reasons discussed in this Order, Petitioner is not entitled to federal habeas relief.
14 Should petitioner wish to appeal the court's decision, a certificate of appealability must issue.  28
15 U.S.C. § 2253(c)(1).  A certificate of appealability may issue where "the applicant has made a
16 substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The
17 certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.
18 28 U.S.C. § 2253(c)(3).

19    A certificate of appealability should be granted for any issue that petitioner can
20 demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different
21 court, or is "'adequate to deserve encouragement to proceed further.'"  *Jennings v. Woodford*, 290

---

[4] The jury was instructed that in order to prove the crime of possession "each of the following elements must be proved: Number one, a person exercised control over, or the right to control, an amount of phenobarbital, a controlled substance; number two, the person knew of its presence; number three, the person knew of its nature as a controlled substance; number four, *that number was in an amount sufficient to be used as a controlled substance*."  Rep.'s Tr. at 215 (emphasis added).

14

F.3d 1006, 1010 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).[5] In this case, however, Petitioner failed to make a substantial showing of the denial of a constitutional right with respect to any issue presented.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's Petition for writ of habeas corpus is DENIED;
2. A certificate of appealability shall not issue; and
3. The Clerk is directed to close this case.

DATED: August 17, 2011

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

---

[5] Except for the requirement that appealable issues be specifically identified, the standard for issuance of a certificate of appealability is the same as the standard that applied to issuance of a certificate of probable cause. *See Jennings*, 290 F.3d at 1010.